UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN MICHIGAN

JOHN HENRY DIXON,

        Petitioner,

     v.                                 CASE NO. 01-CV-40295-FL
                                        HONORABLE PAUL V. GADOLA

HAROLD WHITE,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

      This matter is pending before the Court on petitioner John Henry Dixon's application for the writ of habeas corpus under 28 U.S.C. § 2254.  The habeas petition attacks Petitioner's state conviction for first-degree criminal sexual conduct.  The Court has concluded for reasons given below that the petition must be denied.

**I.  Background**

      Petitioner was convicted on June 26, 1997 of two counts of criminal sexual conduct in the first degree.  *See* Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration with a person under thirteen years of age).  The convictions arose from allegations that Petitioner sexually penetrated his girlfriend's twelve-year-old daughter in October and December of 1993.  The complainant informed her mother about the incidents after Petitioner moved out of their household in January of 1994.  The complainant explained at trial that she did not disclose the abuse sooner because she was afraid that Petitioner would hurt whomever she informed.  The complainant further testified that, after she talked to the police, Petitioner tried to  convince her to say that the allegations were not true.  The

complainant's brother testified that Petitioner offered to give him and his sister $100 if they would keep their mouths shut.

The complainant informed the physician who examined her in January of 1994 that a man named Dixon, who lived in her house, vaginally manipulated her with his tongue and fingers over a period of years.  The complainant claimed to have been sexually abused thirty times over a period of two years.  The physician testified that, although he had not observed any bruises or abnormalities, the complainant's hymenal ring was not intact.  He stated that the physical evidence was consistent with the case history provided by the complainant, but also with penile intercourse, the insertion of a tampon, or self masturbation.

Mary Larkin, who was the assistant prosecutor assigned to the case before the preliminary examination, testified that the complainant called her on August 8, 1994 and made the following comments concerning her accusations about Petitioner:

> Everything I said about him was a lie.  He left without telling me.  I was mad at him.  I got the idea to make up the [criminal sexual conduct] from the [my] cousins. . . . None of it happened.  I'm coming forward now because he shouldn't go to jail for something he didn't do.

(Tr. June 24, 1997, at 30.)  As a result of this call, Ms. Larkin set up an appointment with the complainant and the officer in charge of the case.

The complainant was reassured at the subsequent meeting with Larkin and the police officer that she would not be in trouble no matter what she said.  The complainant did not repeat the statements she had made to Larkin over the telephone.  Instead, she stated that the criminal sexual conduct did occur, that she was frightened, that her mother and Petitioner were in the process of

reuniting, that Petitioner would be moving back in the house, and that he would hurt her for what she had said.  She claimed that the information she had provided to the police, as well as her previous testimony in court, were the truth.

Petitioner was the only defense witness to testify at trial.  He denied sexually assaulting the complainant in any way, and he denied attempting to bribe his son or the complainant to keep quiet or drop the charges.

The jury found Petitioner guilty as charged of two counts of first-degree criminal sexual conduct.  The trial court subsequently sentenced Petitioner to concurrent terms of twenty-five to fifty years on each count.

Petitioner unsuccessfully moved for a new trial and then filed an appeal of right in which he raised his first three habeas claims.  The Michigan Court of Appeals was unpersuaded by the arguments and affirmed Petitioner's convictions and sentence in an unpublished *per curiam* opinion. *See People v. Dixon*, No. 208349 (Mich. Ct. App. Feb. 25, 2000).  Petitioner raised the same three claims in the Michigan Supreme Court, which denied leave to appeal.  *See People v. Dixon*, No. 116735 (Mich. Sup. Ct. Oct. 30, 2000).

Petitioner raised his fourth habeas claim in a motion for relief from judgment filed on October 19, 2001.  The trial court denied the motion because Petitioner had not established "good cause" for failing to raise the issue earlier and "actual prejudice," as was required by Michigan Court Rule 6.508(D)(3).  Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal because Petitioner had failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Dixon*, No. 245464 (Mich. Ct. App.

3

Mar. 28, 2003).  The Michigan Supreme Court denied leave to appeal for the same reason.  *See*

*People v. Dixon*, No. 123657 (Mich. Sup. Ct. Aug. 29, 2003).

Meanwhile, on October 22, 2001, Petitioner filed his habeas corpus petition through counsel.

Because Petitioner was in the process of exhausting state remedies for his fourth claim, the Court

dismissed his petition without prejudice.   On November 19, 2003, Petitioner moved for

reinstatement of this action, and on January 7, 2004, the Court reinstated Petitioner's case.

The pending grounds for relief read:

I.      Petitioner was deprived of his Sixth and Fourteenth Amendment rights to a speedy trial where there was a forty-one month delay between his arrest and his trial, where this delay was primarily attributable to the prosecution, and where the delay resulted in a loss of a material defense witness.

II.     The Michigan state courts' decision to apply the Rape Shield Statute so as to bar defense evidence probative of the source of injury in a sexual abuse case constituted an unreasonable application of law as determined by the Supreme Court of the United States, and violated Petitioner's constitutional right to confrontation of witnesses and to present a defense.

III.    The state courts' decision to allow "bad acts" evidence deprived Petitioner of a fundamentally fair trial, and Petitioner was deprived of the effective assistance of counsel when his counsel failed to object to the admission of this evidence.

IV.     Petitioner was deprived of the effective assistance of counsel at trial and on appeal where (a) trial counsel failed adequately to investigate and present material evidence that the complainant had been sexually assaulted previously, where that evidence would explain the condition of the complainant's hymen, and (b) appellate counsel failed to raise the issue of ineffectiveness of trial counsel.

Respondent argues in an answer to the habeas petition that:  (1) the state court's decision on

4

Petitioner's speedy trial claim was not contrary to, or an unreasonable application of, clearly established federal law; (2) the trial court properly applied the Rape Shield Statute, and Petitioner's rights to confrontation and to present a defense were not violated; and (3) the third and fourth habeas claims are barred by Petitioner's procedural default.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).  A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

5

unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding.  *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ S. Ct. __, 2005 WL 218473, 73 U.S.L.W. 3556 (U.S. Mar. 21, 2005) (No. 04-8376).

## III.  Discussion

### A.  The Speedy Trial Claim

The first habeas claim alleges that Petitioner was deprived of his Sixth and Fourteenth Amendment rights to a speedy trial.  Petitioner contends that there was a forty-one month delay between his arrest and trial, that the delay was attributable primarily to the prosecution, and that the delay resulted in the loss of a material defense witness.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. CONST.  amend. VI.  "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the

6

particular context of the case. . . ." *Barker v. Wingo*, 407 U.S. 514, 522 (1972).  To facilitate such an analysis, the Supreme Court has devised "a balancing test, in which the conduct of both the prosecution and the defendant are weighed."  *Id*. at 530.  Four factors which courts should assess in determining whether a particular defendant has been deprived of the right to a speedy trial are the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant.  *Id*.  These four factors are related to one another, and they "must be considered together with such other circumstances as may be relevant."  *Id*. at 533.

### 1.  Length of the Delay

"The length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Id*. at 530.  The interval between accusation and trial must cross the threshold which divides ordinary delay from "presumptively prejudicial" delay because, by definition, the defendant cannot complain that he has been denied a speedy trial if the state promptly prosecuted his case. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citing *Barker*, 407 U.S. at 530-31).  Post-accusation delay approaching one year generally is deemed "presumptively prejudicial," *id*. at 652 n.1, but delays as long as five years have been held not to violate the right to a speedy trial.  *See, e.g., Barker,* 407 U.S. at 533-36.

Petitioner alleges that he was arrested and charged on January 16, 1994.  His trial began almost three and a half years later on June 20, 1997.  Because the post-accusation delay was more than a year, it must be deemed presumptively prejudicial.

### 2.  Reasons for the Delay

Closely related to the length of the delay are the reasons for the delay. *Barker*, 407 U.S. at 531. "The core task is determining which party shoulders the balance of blameworthiness for th[e] delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001).

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531 (footnote omitted).

Some of the delay in Petitioner's case apparently was caused by a congested trial docket. *See Dixon*, Mich. Ct. App. No. 208349, at 1. This delay is attributed to the State. *Barker*, 407 U.S. at 531.

Still other delays were due to Petitioner's motion for the complainant's psychological records, which were being held by Oakland Family Services. Although the resolution of pretrial motions is a presumptively justifiable reason for a delay, which should not be attributable to the State, *see O'Dell*, 247 F.3d at 668 (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997), and *United States v. Jones*, 91 F.3d 5, 8 (2d Cir. 1996)), the delay in acquiring the complainant's records was due to a lack of cooperation by Oakland Family Services and to negligence by court employees in handling the records. Petitioner first requested the records on April 19, 1995, and his request was granted on May 3, 1995. Oakland Family Services delivered a copy of the records to the trial court, but court personnel lost the records. Petitioner then obtained another order for the records. The records were delivered to the state court a second time, but court personnel also

8

misplaced or lost those records.  After the records were delivered a third time, the trial court was unable to read them due to numerous "blackouts."  The records were finally obtained in November of 1996.  (Tr. June 11, 1997, at 3-4, 11, 16-17.)   Petitioner alleges that the mishandling of the records accounted for seventeen months of the delay.

The trial was delayed for another six months because a court clerk mistakenly typed "final disposition" on the docket entry sheet.  *See* Oakland County docket entries for Nov. 22, 1996 and May 19, 1997.  This error resulted in the case being taken off the trial docket.  (Tr. June 11, 1997, at 12, 14, and 17.)

Eight months of the delay apparently was caused by stipulated adjournments of the trial date. *See Dixon*, Mich. Ct. App. No. 208349, at 1.  This delay is neutral, but the remaining unexplained delay must be attributed to the state. *United States v. Schreane*, 331 F.3d 548, 556 (6th Cir.) (quoting *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987)), *cert. denied*, 540 U.S. 973 (2003).

On balance, it appears that the State was responsible for much of the delay, although  there is no indication that the delay was part of an intentional attempt by the State to hamper Petitioner's defense.  Less weight should be given to neutral reasons such as negligence and a congested docket than to a deliberate attempt to hamper the defense. *Barker*, 407 U.S. at 531.

### 3.  Assertion of the Right

The third factor in determining whether a defendant's right to a speedy trial has been violated is whether the defendant asserted the right.  "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.

9

This factor weighs in Petitioner's favor, because he filed a demand for a speedy trial on August 16, 1994, and he filed motions to dismiss his case for failure to grant him a speedy trial on January 17, 1996, on November 20, 1996, and in June of 1997.  (Tr. June 11, 1997, at 2-3.).  He also renewed his motion to dismiss on speedy trial grounds during trial.  (Tr. June 23, 1997, at 13-15.) The Court notes, however, that Petitioner provided the trial court with no reason to believe that he was prejudiced by the delay until after the trial began.  (Tr. June 11, 1997, at 17; June 23, 1997, at 13-15.)

### 4.  Prejudice

Although the first three factors of the balancing test favor Petitioner, Petitioner has failed to satisfy the fourth and final factor, which is  prejudice to the defendant.  "A defendant must show that 'substantial prejudice' has resulted from the delay."  *Schreane*, 331 F.3d at 557 (citing *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993) (quoting *United States v. DeClue*, 899 F.2d 1465, 1470 (6th Cir. 1989)).  Prejudice should be assessed in light of the following three defense interests which the speedy trial right was designed to protect:  (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired.  *Barker*, 407 U.S. at 532.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious."  *Id.*

Petitioner was released on bond pending trial, and he does not allege that he was troubled by excessive anxiety or concern.  He does allege that his defense was impaired by the delay.  He claims that a defense witness, Patrick Mercier, moved out of state during the delay in the

proceedings and that the witness was not available to testify. Mercier allegedly would have testified that Petitioner worked for him from April 27, 1993, through August 27, 1993, and that Petitioner reported to work at 8:00 a.m. Petitioner intended to use Mercier's testimony to discredit the complainant's testimony that Petitioner often sexually assaulted her at 7:00 a.m. Petitioner anticipated that Mercier would support Petitioner's testimony that he left for work, or was in the process of leaving home, at 7:00 a.m. when the alleged assaults occurred.

The alleged period of employment (April 27, 1993, through August 27, 1993) does not correspond to the dates of the incidents for which Petitioner was charged (October and December of 1993). Petitioner nevertheless claims that he wanted to use Mercier's testimony to attack the complainant's credibility concerning Petitioner's prior "bad acts." However, defense counsel apparently did not attempt to locate Mr. Mercier until approximately three weeks before trial. He informed the trial court on the second day of trial that Mr. Mercier was no longer living in the State of Michigan and that he was no longer available for him to call as a witness. (Tr. June 23, 1997, at 15.) Defense counsel did not provide any details about his attempts to find Mercier, and he did not request the Court's assistance in bringing Mercier to court. (*Id*. at 15-17.)

Furthermore, "[w]hen prejudice has been found, the government's delay has typically been shockingly long. *See, e.g., Doggett*, 505 U.S. at 657 (six years); [*United States v.*] *Brown*, 169 F.3d [344, 351 (6th Cir. 1999)] (five and one-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight years)." *Schreane*, 331 F.3d at 559. The delay of approximately three and a half years in this case was not "shockingly long" by Sixth Circuit standards.

The Court concludes that the delay in Petitioner's case did not result in "substantial

11

prejudice."  Therefore, the state court's conclusion -- that Petitioner was not denied his constitutional right to a speedy trial – was not an unreasonable application of *Barker v. Wingo*, and Petitioner has no right to habeas relief on the basis of his first claim.

### B.  Failure to Admit Evidence

Petitioner attempted to introduce evidence at trial that the complainant was sexually assaulted by her brother, Dennis Lear.  Petitioner asserted through counsel that the evidence would have provided an alternate explanation for medical testimony that the complainant's hymen was enlarged and that some kind of penetration likely occurred.  (Tr. June 23, 1997, at 6-9.)

The second habeas claim alleges that the trial court's decision to exclude this evidence constituted 1) an improper application of the State's rape shield statute and 2) an unreasonable application of *Michigan v. Lucas*, 500 U.S. 145 (1991), because the trial court's ruling violated his constitutional rights to confront witnesses and to present a defense.

### 1.  Violation of the Rape Shield Statute

The contention that the trial court violated the State's rape shield law, Mich. Comp. Laws § 750.520(j), is not a cognizable claim, because "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

### 2.  The Right to Confront Witnesses and to Present a Defense

Petitioner also contends that the failure to admit evidence of an alternate source of vaginal

injury violated his right to confront witnesses and his right to present a defense.  The Michigan Court of Appeals determined that the evidence was irrelevant and that any probative value in the proposed testimony was outweighed by its prejudicial nature.

Criminal defendants possess a constitutional right to confront witnesses and to present a defense.  *See* U.S. CONST. amends. VI and XIV; *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *California v. Trombetta,*  467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 294, 302 (1973);  *Washington v. Texas*, 388 U.S. 14, 19 (1967).  "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Lucas*, 500 U.S. at 151 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

However, "the right to present relevant testimony is not without limitation.  The right 'may in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, 483 U.S. at 55 (quoting *Chambers,* 410 U.S. at 295).  The Supreme Court "[has] explained, for example, that 'trial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Lucas*, 500 U.S. at 149 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused" or "undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 308, 315 (1998) (citing *Rock, Chambers,* and *Washington*).

13

The exclusion of evidence about Dennis Lear's conduct with the complainant was not arbitrary, disproportionate, or fundamentally unfair because there was no evidence that Dennis Lear sexually penetrated the complainant. (Tr. June 23, 1997, at 6-13.) Petitioner concedes as much in his briefs. *See* Reply Brief in Support of Pet. for Writ of Habeas Corpus, at 6; Supplemental Brief in Support of Pet. for Writ of Habeas Corpus, at 7. Thus, the "proffered evidence was not relevant for purposes of showing the origin of the victim's physical condition." *Dixon*, Mich. Ct. App. No. 208349, at 2.

Even if Petitioner could have established that Dennis Lear penetrated the complainant, the evidence would not have exculpated Petitioner. Moreover, "the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser." *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000). Petitioner wanted to introduce evidence of Dennis Lear's alleged conduct for reasons other than to show motive, bias, or prejudice. He hoped to explain the source of the complainant's enlarged hymen. Significantly, he was not precluded from eliciting testimony that the hymenal damage could have been caused by noncriminal means. (Tr. June 24, 1997, at 15-16.) The Court therefore concludes that the state courts' rulings were not contrary to, or an unreasonable application of, Supreme Court precedent on the right to confront witnesses and the right to present a defense.

### C. "Bad Acts" Evidence

The third habeas claim alleges that the admission of prior "bad acts" evidence deprived Petitioner of a fundamentally fair trial. The "bad acts" evidence consisted of the complainant's testimony that Petitioner had sexually abused her at least once a week since she was nine or ten

14

years old.  (Tr. June 23, 1997, at 69-72.)  Petitioner contends that the prosecutor's purpose in

eliciting this testimony was to show that Petitioner was acting in conformity with previous behavior

when he committed the charged acts.

### 1. Procedural Default

Respondent alleges that Petitioner's claim about other acts evidence is procedurally

defaulted, because Petitioner did not object to the evidence at trial.  A procedural default in the

habeas context is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S.

87, 89 (1997).  The doctrine of procedural default provides that,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test

for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from

habeas review.  Pursuant to *Maupin*, courts must ascertain whether:  (1) there is a state procedural

rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule;

(2) the state courts actually enforced the state procedural rule; (3) the procedural rule is an adequate

and independent state ground on which the state can rely to foreclose federal review of a federal

constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural

rule and actual prejudice from the alleged constitutional error.  *Id*. at 138.

The procedural rule in question here requires defendants to preserve issues for appellate

review by first objecting in the trial court. *People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999). "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner violated this rule by failing to object at trial to evidence of prior similar acts. (Tr. June 23, 1997, at 69-72).

The contemporaneous-objection rule is enforced in Michigan. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003). It was enforced in this case by the Michigan Court of Appeals, which commented on Petitioner's failure to object to the disputed testimony at trial and then reviewed Petitioner's claim for plain error. The court of appeals determined that Petitioner had not established plain error in the admission of the testimony.

Plain-error review by a state appellate court constitutes enforcement of the State's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *petition for cert. filed*, (U.S. Feb. 18, 2005) (No. 04-8810). Furthermore, the Michigan Supreme Court did not set aside the procedural bar and decide Petitioner's claim on the merits.

The contemporaneous-objection rule was an adequate and independent state ground because it was clearly established and followed before Petitioner's trial, *see, e.g., Grant*, 445 Mich. at 535 (decided in 1994), and because the state courts actually relied on it. Thus, the first three elements of a procedural default (violation of a state procedural rule, enforcement of the rule, and an adequate and independent state ground) have been satisfied. Petitioner must demonstrate "cause and prejudice" or a fundamental miscarriage of justice for this Court to consider his claim on the merits.

16

### 2.  "Cause"

Petitioner alleges that the prosecutor's failure to provide advance warning that she would elicit the evidence was "cause" for his procedural default.   However, Petitioner apparently anticipated that the evidence would become an issue at trial, because he attempted to produce Patrick Mercier as a witness to attack the complainant's credibility about these other acts.  (Tr. June 23, 1997, at 14-15.)[1]

Petitioner alleges in the alternative that defense counsel was "cause" for his failure to object to evidence of prior "bad acts."  He asserts, as an independent claim, that counsel's failure to object constituted ineffective assistance.   The Michigan Court of Appeals rejected Petitioner's ineffectiveness claim on the ground that Petitioner had not overcome the presumption that defense counsel's failure to object was a matter of trial strategy.

To prevail on an ineffectiveness claim, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id*. at 688.  He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted

---

[1]  The complainant testified at the preliminary examination that Petitioner had sexually assaulted her on many other occasions.  (Tr. Feb. 3, 1994, at 37-47.)

from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.  However,

> there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed.

*Id.* at 697.

Petitioner has failed to satisfy the prejudice component of the Strickland test, because the trial court adequately instructed the jury on how to consider "bad acts" evidence.  The trial court charged the jurors that, if they believed the testimony about improper sexual conduct for which Petitioner was not on trial, they should consider the evidence for one limited purpose:  to help them judge the believability of the testimony about acts for which Petitioner was being tried.  The trial court cautioned the jurors not to consider the evidence for any other purpose, such as evidence that Petitioner was a bad person or was likely to commit crimes.  The court specifically charged the jurors not to convict Petitioner because they thought he was guilty of other bad conduct.  (Tr. June 24, 1997, at 184-85.)

"There is no way of knowing whether the jury made the improper character-propensity inference," *Albrecht v. Horn*, 314 F. Supp. 2d 451, 472 (E.D. Pa. 2004), but the Court must presume that the jury was capable of considering the evidence for one purpose but not another.  *Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).  Assuming that the jurors considered the prior acts evidence for the permissible purpose of determining the credibility of witnesses, they still could have found Petitioner guilty, because the

18

complainant's testimony was unequivocal, and her brother's testimony that Petitioner tried to silence them tended to corroborate the complainant's allegations. "Thus, Petitioner has presented the Court with no reason to believe that the jury made a character-propensity inference or would have to do so," and "[t]he Court's confidence in the jury's verdict is unshaken." *Albrecht v. Horn,* 314 F. Supp. 2d at 472 (citing *Strickland*, 466 U.S. at 694).

To conclude, even assuming that defense counsel's failure to object amounted to deficient performance, the deficiency did not prejudice the defense. Therefore, trial counsel was not ineffective and cannot be deemed "cause" for Petitioner's default. It follows that the state court's conclusion – that trial counsel was not ineffective – was an objectively reasonable application of *Strickland*. The Court need not determine if Petitioner was prejudiced by the alleged ineffectiveness because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

### 3.  Miscarriage of Justice

Petitioner may overcome his procedurally defaulted claim, even in the absence of "cause and prejudice," upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, __124 S. Ct. 1847, 1849 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new

19

reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner has not submitted any new and credible evidence that he is actually innocent of the underlying offense. Therefore, a miscarriage of justice will not occur as a result of the Court's decision not to adjudicate the merits of Petitioner's third claim.

### 4.  Lack of Merit in Petitioner's Claim

Even if Petitioner's claim were not procedurally defaulted, the Court would have to conclude that the claim has no merit. There is no Supreme Court decision holding that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied sub nom Bugh v. Bradshaw*, 540 U.S. 930 (2003). Thus, the state appellate court's rejection of Petitioner's claim cannot be deemed "contrary to" Supreme Court precedent under § 2254(d)(1). *Id*. at 513.

### D.  Ineffective Assistance of Counsel

The fourth and final habeas claim alleges that Petitioner was deprived of the effective assistance of counsel at trial and on appeal. Petitioner contends that trial counsel failed to investigate and present material evidence that the complainant had been sexually assaulted by Petitioner's brother, Andy Dixon. According to Petitioner, this evidence would have explained medical evidence that the complainant's hymen was not intact. Petitioner argues that appellate counsel should have asserted that trial counsel was ineffective for not presenting evidence that Andy Dixon penetrated the complainant with his finger.

### 1.  Procedural Default

Respondent argues that Petitioner's claims about trial and appellate counsel are procedurally

defaulted.  The procedural rule in question is Michigan Court Rule 6.508(D), which prohibits

granting relief from judgment if a motion

> (3)    alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> > (a)    good cause for failure to raise such grounds on appeal or in the prior motion, and
> >
> > (b)    actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D) (effective October 1, 1989).

Petitioner violated the essence of Rule 6.508(D)(3) by not raising his claim about trial

counsel on direct appeal.  He raised the claim for the first time in his motion for relief from judgment

and in the subsequent appeals.

A state procedural rule is an adequate and independent basis for denying relief if it was

"firmly established and regularly followed" at the time it was applied, *Rogers v. Howes,* 144 F.3d

990, 992 (6th Cir. 1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24-(1991)), and if the state

court actually relied on the rule, *Harris v. Reed*, 489 U.S. 255, 263 (1989).  Rule 6.508(D) was

regularly followed as of 1990, *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000), and all three

state courts relied on the rule to deny relief.  The trial court enforced the rule in its order denying

Petitioner's motion for relief from judgment.  The court stated that Petitioner had failed to raise his

claim of ineffective assistance of counsel in his motion for new trial and that a defendant is not

entitled to relief under Michigan Court Rule 6.508(D)(3) if an issue could have been raised in a prior

21

appeal or motion.[2]  The trial court went on to say that Petitioner had not met his burden under Rule

6.508(D)(3) of establishing "good cause" and "actual prejudice."  The Michigan Court of Appeals

and Michigan Supreme Court likewise concluded that Petitioner had failed to  establish entitlement

to relief under Rule 6.508(D).  Thus, in order for Petitioner to prevail on his claim, he must show

cause for his procedural default and resulting prejudice or that failure to review his claim will result

in a miscarriage of justice.  *Coleman,* 501 U.S. at 750.

### 2.  "Cause"

Petitioner argues that his appellate attorney's ineffectiveness was "cause" for not raising his

claim about trial counsel on direct review.  Ineffective assistance of counsel is "cause" for a

procedural default and allows a federal court to reach the merits of a defaulted claim if the attorney

was constitutionally ineffective under the standard established in *Strickland. Murray v. Carrier*, 477

U.S. at 488.  An attorney is constitutionally ineffective under *Strickland* if his or her performance

was deficient and the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

An appellate attorney need not raise every nonfrivolous argument on appeal, *Evitts v. Lucey*,

469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and "the requisite prejudice

cannot be shown if the claims are found to lack merit."  *Burton v. Renico*, 391 F.3d 764, 774 (6th

Cir. 2004).  "Notwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on

counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was

---

[2]  The trial court addressed only Petitioner's claim about trial counsel.  Petitioner's claim
about appellate counsel is not procedurally defaulted, because Petitioner's motion for relief from
judgment was the earliest opportunity that Petitioner had to raise the claim.  *Whiting v. Burt*, 395
F.3d 602, 615 n.7 (6th Cir. 2005) (quoting *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004)).

incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. at 288); *see also Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). With these principles in mind, the Court will proceed to review Petitioner's claim about trial counsel to determine whether that there is any merit in that claim and whether the claim was clearly stronger than the issues raised on direct appeal.

### 3. Trial Counsel

Petitioner contends that trial counsel failed to investigate and present evidence that Petitioner's brother, Andy Dixon, sexually assaulted the complainant. Petitioner asserts that this evidence would have explained the condition of the complainant's hymen and her ability to describe a nearly identical molestation at a young age.

Defense counsel did elicit expert testimony that noncriminal means could have caused the condition of the complainant's hymenal ring. (Tr. June 24, 1997, at 16.) In addition, Andy Dixon was charged with second-degree criminal sexual conduct (Pet. for Writ of Habeas Corpus, exh. 1, at 3), which involves sexual *contact* with another person, not sexual *penetration*. *See* Mich. Comp. Laws § 750.520c. And although the complainant apparently informed the police that Andy Dixon put his finger in her private area, *see* exhibits to Petitioner's Supplemental Brief in Support of Pet. for Writ of Habeas Corpus, she did not mention penetration when she testified against Andy Dixon at his preliminary examination. Her testimony there was that Andy Dixon touched her "private spots," while she was clothed and while she was naked. (Pet. for Writ of Habeas Corpus, exh. 1, at 31-32.) Because the complainant did not testify that Andy Dixon penetrated her vagina, her

23

accusations under oath did not provide an alternate explanation for medical testimony that her hymenal ring was not intact. And her accusations against Andy Dixon would have been undermined by the fact that the case against him was dismissed without prejudice because she refused to prosecute and was found incompetent to testify. (Pet. for Writ of Habeas Corpus, exh. 3.)

Defense counsel might have been reluctant to raise the matter of Andy Dixon's alleged assault on the complainant, because Andy was Petitioner's brother, and the evidence sought to be introduced implicated Andy in criminal conduct. Furthermore, the evidence would not have exculpated Petitioner. The jurors might have concluded that both Petitioner and Andy Dixon sexually abused the complainant.

For all these reasons, trial counsel's alleged failure to investigate and raise the issue about Andy Dixon did not fall below an objective standard of reasonableness. Therefore, Petitioner's claim about trial counsel was not clearly stronger than the three claims appellate counsel did raise on appeal. Because Petitioner's claim about trial counsel lacks merit, appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance, and Petitioner cannot rely on ineffective assistance of appellate counsel as cause to excuse his procedural default.

### 4. Prejudice; Miscarriage of Justice

The Court need not determine if Petitioner was prejudiced by the alleged violation of federal law, because he has not shown "cause." *Smith v. Murray*, 477 U.S. at 533; *Willis v. Smith*, 351 F.3d at 746. And because he has not submitted any new evidence that he is actually innocent of the underlying offense, a miscarriage of justice will not occur as a result of the Court's decision not to

adjudicate the merits of Petitioner's fourth claim.

## IV.  Conclusion

Petitioner's fourth claim, as well as his claim about prior "bad acts" evidence, are procedurally defaulted.  The other claims lack merit because the state court's decision on those claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly,

**IT IS ORDERED AND ADJUDGED** that the application for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), he may file a **MOTION** for a COA with this Court within **THIRTY (30) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court.  *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (**"<u>We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA</u>."** (emphasis added).  Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **TWENTY (20) DAYS** of service of Petitioner's motion for a COA.

s/Paul V. Gadola
PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

Date:    April 21, 2005

25

Certificate of Service

I hereby certify that on ___April 22, 2005___ , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

_____William C. Cambpell_____ , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____Kenneth M. Mogill_____.


s/Ruth A. Brissaud_____

Ruth A. Brissaud, Case Manager

(810) 341-7845

26